## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MERLE FOGLIA, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | No. 17-1216 |
|  | : |  |
| METROPOLITAN PROPERTY AND | : |  |
| CASUALTY INSURANCE COMPANY, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                    **JANUARY 31, 2018**

Plaintiff Merle Foglia ("Foglia") initiated this action against Defendant Metropolitan Property and Casualty Insurance Company ("Metropolitan") in the Court of Common Pleas of Philadelphia County, alleging that Metropolitan breached its duty to defend and acted in bad faith by not defending her in a separate case that involved the sale of her home (the "Underlying Action"). Metropolitan timely removed the instant case to this Court and filed a counterclaim against Foglia for declaratory judgment on the basis that it owed no defense obligations to Foglia in the Underlying Action because there is no coverage under two Metropolitan insurance policies.[1]

Presently before the Court are Foglia's and Metropolitan's Cross-Motions for Summary Judgment, along with numerous briefs in support and opposition to the respective Motions. The parties have stipulated that the instant Motions address only the coverage questions raised in Count I of Foglia's Complaint (Breach of Contract) and Metropolitan's counterclaim for

---

[1] Foglia is a citizen of Pennsylvania, and Metropolitan is a citizen of Rhode Island. (*See* Notice of Removal ¶¶ 3, 4.) Accordingly, we have diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

declaratory judgment.  (*See* Doc. Nos. 25, 26.)  For the reasons noted below, Metropolitan's

Motion for Summary Judgment is granted, and Foglia's Motion for Summary Judgment is

denied.  Judgment is entered in favor of Metropolitan on its counterclaim of declaratory

judgment and Foglia's breach of contract claim.

## I.    BACKGROUND

### A.    The Underlying State Court Action

On August 15, 2014, Jason and Emily Konn ("the Konns") purchased a property ("the

Property" or "the home") from Foglia located at 4120 Barberry Drive, Lafayette Hill,

Pennsylvania.[2]  (Compl., Ex. B ("Konn Complaint" or "Underlying Complaint") ¶ 14.)  By the

time of sale, Foglia had lived in the home for more than thirty years.  (*Id.* ¶ 15.)  The Konns

relied on a Seller's Disclosure Statement in connection with buying the Property, which provided

there was no water leakage, accumulation, dampness, or infiltration in the house or other

structures.  (*See* Konn Complaint, Ex. B; *see also* Def.'s Mot. Summ. J. ¶¶ 27-35.)  At no time

did Foglia disclose that the home had a history of water infiltration and damage.  (Konn Compl.

¶ 21.)

After the home was sold, the Konns hired a company to perform renovations to convert

the lower level of the home into an in-law suit.  (*Id.* ¶¶ 35, 36.)  Around April 28, 2015, while the

renovations were ongoing, the Konns learned for the first time that there was significant water

damage in the area to become the in-law suite.  (*Id.* ¶ 37.)  Indeed, portions of an interior wall

had recently been replaced, evidenced by a Lowe's barcode label that was still present on the

new wood.  (*Id.* ¶ 38.)

---

[2] We take the factual allegations in the Konn Complaint as true and construe them liberally as we must under
Pennsylvania law.  *See Tower Ins. Co. v. Dockside Assocs. Pier 30 LP*, 834 F. Supp. 2d 257, 261 (E.D. Pa. 2011)
(citing *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 669 (Pa. Super. Ct. 1997)).

The Konns filed a six-count Complaint in the Court of Common Pleas of Philadelphia County, the first four of which were directed at Foglia.[3] (*See* Konn Compl.) Count I alleged fraud and intentional concealment; Count II alleged intentional misrepresentation; Count III alleged a breach of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1 *et seq.*; and Count IV alleged negligence.[4] The Konns alleged that "Defendant Foglia knew or should have known about the history of water infiltration and water damage" and that "the house had a significant history of water infiltration and water damage." (*Id.* ¶¶ 22, 25.) They further claimed that "Defendant Foglia and/or people working on her behalf actively worked to conceal evidence and information about water infiltration in order to induce [the Konns] to purchase the property." (*Id.* ¶ 44.)

**B.      The Metropolitan Insurance Policies**

**1.      The Homeowners Insurance Policy**

Metropolitan insured Foglia under homeowners insurance policy (the "Homeowners Policy") number 6414136230 that had a policy term of June 18, 2013 to June 18, 2014. (Def.'s Mot. Summ. J. ¶ 50 (citing Ex. 1 ("Homeowners Policy") at Policy 01[5]).) As it pertains to Foglia's personal liability, the Homeowners Policy provides that "**We** will pay all sums for **bodily injury**, **property damage** and **personal injury** to others for which the law holds **you** responsible because of an **occurrence** to which this coverage applies." (Homeowners Policy at Policy 30) (emphasis in original).) It further states that "**We** will defend **you**, at **our** expense

<hr/>

[3] The Underlying Litigation was captioned as *Konn v. Foglia et al.*, Philadelphia County, May Term, No. 01585. (Compl. ¶ 7.)

[4] Count V of the Konn Complaint was directed towards "Joe Burke" and "Berkwhire Hathaway," who are alleged to be agents on behalf of Foglia in connection with the sale of the Property. (*See* Konn Compl. ¶ 17.) Count VI was directed towards "Peach Inspections" and "Dan Keogh," who are alleged to have conducted a home inspection of the Property around approximately May 15, 2014. (*Id.* ¶ 29.)

[5] Metropolitan has Bates-numbered the Policy, which we will also utilize for ease of use.

with counsel of **our** choice, against any suit seeking these damages. . . . **We** are not obligated to defend any claim or suit seeking damages not covered under this policy." (*Id.* (emphasis in original).)

The Homeowners Policy also contains several exclusions, which provide, in part:

## SECTION II – LOSSES WE DO NOT COVER

## COVERAGE F – PERSONAL LIABILITY AND COVERAGE G – MEDICAL PAYMENTS TO OTHERS

1.  **Intentional Loss**. **We** do not cover **bodily injury** or **property damage** which is reasonably expected or intended by **you** or which is the result of **your** intentional and criminal acts or omissions.

    \*       \*       \*

16. **Failure to Disclose**. **We** do not cover **bodily injury**, **property damage** or **personal injury** caused by or resulting from **your** failure to disclose any condition of property, whether known or unknown, sold to a buyer of the **residence premises**.

    ### COVERAGE F – PERSONAL LIABILITY

    \*       \*       \*

3.  **Owned Property**. **We** do not cover **property damage** to property owned by **you**. This includes costs or expenses incurred by **you** or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an **insured premises**.

4.  **Care, Custody or Control**. **We** do not cover **property damage** to property occupied or used by **you**, rented to **you**, in **your** care or over which **you** have physical control.

(*Id.* at Policy 30-31, 34 (emphasis in original).)

The definition of "you" includes Foglia, and the terms "we," "us," and "our" includes Metropolitan. (*Id.* at Policy 07.) The Homeowners Policy defines "occurrence" as "an accident,

4

including continuous or repeated exposure to substantially the same general harmful conditions during the term of the policy." (*Id.*) "Property damage" is defined as "physical damage to or destruction of tangible property, including loss of use of this property." (*Id.*)

### 2. The Personal Excess Liability Policy

Foglia was also the named insured under a Metropolitan Personal Excess Liability Policy (the "Excess Policy") at or around the time she signed the Seller's Disclosure Statement. (Def.'s Mot. Summ. J. ¶ 58.) The Excess Policy was policy number 9005411000 and had a policy term of January 17, 2014 to January 17, 2015. (*Id.* (citing Ex. 3 ("Excess Policy")).) The coverage under the Excess Policy provides as follows:

### SECTION I

### COVERAGE

**PERSONAL EXCESS LIABILITY (LIABILITY)**

**We** will pay all sums in excess of the **retained limit** for **damages** to others caused by an **occurrence** for which the law holds an **insured** responsible and to which this policy applies. **We** will not pay more than the limit shown in the Declarations for Liability.

**DEFENSE - SETTLEMENT**

**We** will defend the **insured** at **our** expense with attorneys of **our** choice, against any suit or claim covered under this policy but not covered under any **underlying policy** or any other insurance available to the **insured**. **We** will not defend any claim or suit not covered by an **underlying policy** because of **your** failure to maintain the required **underlying policy**.

(Excess Policy at CL 0058[6] (emphasis in original).)

---

[6] Metropolitan has also Bates-numbered the Excess Policy, which we will utilize for ease of use.

The Excess Policy contains the following exclusion that is amended by an endorsement:

## SECTION II

## EXCLUSIONS

This policy does not apply to **personal injury** or **property damage**:

A.      resulting from any intentional act committed by an **insured** or at the direction of any **insured**.  However, this exclusion does not apply to **personal injury** or **property damage** resulting from the use of reasonable force by **you** to protect persons or property.

(*Id.* at CL 0059, 0067 (emphasis in original).)

The Excess Policy's definition of "you" includes Foglia, and the definition of "we," "us," and "our" includes Metropolitan.  (*Id.* at CL 0061.)  It further provides the following definitions:

**"Occurrence"** means an accident, including continuous or repeated exposure to the same condition that results during the policy period in **personal injury** or **property damage**.

\*        \*        \*

**"Property damage"** means injury or destruction of tangible property, including loss of use of the damaged or destroyed property.

\*        \*        \*

**"Underlying Policy"** means a policy listed as an underlying policy in the Declarations.

(*Id.* at CL 0061-62 (emphasis in original).)  The Homeowners Policy was considered the "Underlying Policy" for purposes of the Excess Policy.  (Def.'s Mot. Summ. J. ¶ 70.)

### C.        Metropolitan Refuses to Defend Foglia Against the Konn Complaint

On or about July 23, 2015, Foglia received notice of the Underlying Action and made a demand to Metropolitan for defense and indemnity under the Homeowners Policy.[7]  (*Id.* ¶ 72.) In making her claim for defense and indemnity, Foglia provided a letter to Metropolitan from the Konns' attorney, which sets forth the basis of the anticipated claims against Foglia.  (*Id.* ¶ 73.) In response to Foglia's claim, Metropolitan issued a reservation of rights letter advising her that there may not be coverage for the claims asserted in the Konn Complaint.  (*Id.* ¶ 74.)  Based on the information in the Konns' attorney's letter, Metropolitan informed Foglia that there was "a potential coverage problem for this claim," but that it would continue to investigate it.  (*Id.* ¶ 77 (citing Ex. 4 at CL 0001).)

On August 20, 2015, Foglia reiterated her demand for coverage under the Homeowners Policy and provided Metropolitan with the Konn Complaint.  (*Id.* ¶ 80.)  After reviewing the allegations in it, Metropolitan denied Foglia's request for defense and indemnity under the Homeowners Policy in a letter dated September 30, 2015.  (*Id.* ¶ 81 (citing Ex. 6).)  Metropolitan advised that coverage was unavailable for the allegations in the Konn Complaint because an "occurrence" had not taken place and, even if one had, there were a number of exclusions that precluded coverage.  (*Id.* (citing Ex. 6).)  On December 28, 2015, Metropolitan similarly informed Foglia that the Excess Policy would not provide coverage for the claims asserted in the Konn Complaint.  (*Id.* ¶ 82.)

In the instant action, Foglia claims that she was "forced to retain counsel at her own expense to defend the [Konn Complaint]" and "suffered damages in excess of $93,000 for legal fees and expert witness fees and costs incurred in the defense of the [Konn Complaint]."

---

[7] A review of the Philadelphia Civil Docket in the Underlying Action reveals that the action was initiated via Writ of Summons.

(Compl. ¶¶ 25, 36.)  She avers that Metropolitan breached the Homeowners Policy and Excess

Policy and acted in bad faith when it refused to defend her in the Underlying Action.  (*See id.* ¶¶

26-52.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) states that summary judgment is proper "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court asks "whether the evidence

presents a sufficient disagreement to require submission to the jury or whether . . . one party

must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The moving party has the initial burden of informing the court of the basis for the motion and

identifying those portions of the record that demonstrate the absence of a genuine dispute of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "A fact is material if it could

affect the outcome of the suit after applying the substantive law.  Further, a dispute over a

material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could

return a verdict in favor of the non-moving party.'"  *Compton v. Nat'l League of Prof'l Baseball*

*Clubs*, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998) (quoting *Liberty Lobby*, 477 U.S. at 255).

Summary judgment must be granted "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  Once the moving party

has produced evidence in support of summary judgment, the non-moving party must go beyond

the allegations set forth in its pleadings and counter with evidence that presents "specific facts

showing that there is a genuine issue for trial."  *See Big Apple BMW, Inc. v. BMW of N. Am.,*

*Inc.*, 974 F.2d 1358, 1362-63 (3d Cir. 1992).  "More than a mere scintilla of evidence in its

favor" must be presented by the non-moving party in order to overcome a summary judgment motion. *Tziatzios v. United States*, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine disputes of material fact, then summary judgment will be granted. *Celotex*, 477 U.S. at 322.

## III.    DISCUSSION

As indicated above, the Konns alleged the following claims against Foglia in the Underlying Action: (1) fraud and intentional concealment; (2) intentional misrepresentation; (3) breach of Pennsylvania's UTPCPL; and (4) negligence. Foglia concedes that there is no coverage for the allegations in the Konn Complaint for Counts I-III. (*See* Pl.'s Br. in Support of Pl.'s Answer to Cross-Mot. Summ. J. at 15.) Thus, the crux of the issue before the Court is whether the Homeowners Policy and Excess Policy (collectively, the "Policies") cover the negligence claim in the Konn Complaint.

Metropolitan contends that there is no coverage under the Homeowners Policy because: (1) the allegations set forth in the Konn Complaint do not constitute an "occurrence"; (2) there was no "property damage" within the meaning of the Homeowners Policy; and (3) the factual allegations in the Konn Complaint are excluded from coverage under the "Failure to Disclose" exclusion. (*See* Def.'s Br. in Support Cross-Mot. Summ. J. at 12-22.) We need not address all of Metropolitan's arguments because it is clear that the Konn Complaint does not allege an "occurrence" or "property damage" under the Policies. Accordingly, Metropolitan had no duty to defend Foglia in the Underlying Action.

## A. Duty to Defend and Contract Interpretation Under Pennsylvania Law[8]

"An insurer's duty to defend its insured is broader than its duty to indemnify." *State Farm Fire & Cas. Co. v. Moreco Constr., Inc.*, 171 F. Supp. 3d 373, 378 (E.D. Pa. 2016) (citing *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 672-73 (3d Cir. 2016)). "Under Pennsylvania law . . . a court ascertaining whether an insurer has a duty to defend its insured makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint." *Id.* (quoting *Ramara*, 814 F.3d at 672-73) (internal quotation marks omitted). "If the allegations of the underlying complaint *potentially* could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case." *Id.* (quoting *Ramara,* 814 F.3d at 672-73) (emphasis in original) (internal quotation marks omitted). If an underlying action against an insured "avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover." *Id.* (quoting *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)) (internal quotation marks omitted).

"In determining an insurer's duty to defend, we must consider only the allegations of the underlying action and may not look outside its 'four corners' or consider extrinsic evidence." *Id.* (citing *Ramara*, at 672-73) (stating that "[i]n *Ramara*, our Court of Appeals noted Pennsylvania's 'four corners' rule, also known as the 'eight corners' rule, directing 'a court in deciding if there is coverage [to] look at both the insurance policy and the underlying complaint'"). "We view the allegations of the underlying complaint as true and liberally

---

[8] "A federal court sitting in diversity must apply state substantive law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citation omitted). Foglia and Metropolitan both agree that Pennsylvania law applies in this matter, and we will thus utilize Pennsylvania law. (*See* Pl.'s Br. in Support of Pl.'s Answer to Cross-Mot. Summ. J. at 6; Def.'s Br. in Support Cross-Mot. Summ. J. at 7.)

construe the allegations in favor of the insured." *Id.* (citing *Ramara,* 814 F.3d at 673-74). "If there is any possibility coverage has been triggered by allegations in the underlying complaint, an insurer has a duty to defend." *Id.* (citing *Ramara,* 814 F.3d at 673-74).

Even in cases where only "a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover" on the covered claim. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). On the other hand, if the insurer can confine the complaint to "recovery that is not within the scope of the coverage," the insurer bears no duty to defend. *Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.*, 513 F. Supp. 2d 157, 164 (M.D. Pa. 2007) (quoting *USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 202 n.18 (3d Cir. 2006)) (internal quotation marks omitted).

Interpreting an insurance contract is a question of law. *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 162 (3d Cir. 2011). In interpreting a contract, a court's primary goal "is to ascertain the parties' intentions as manifested by the policy's terms." *Kvaerner*, 908 A.2d at 897. "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (quoting *Gene & Harvey Builders, Inc. v. Pa. Mfrs. Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986)).

## B.     Analysis

### 1.     Foglia's Ambiguity Argument

As a preliminary matter, we first address Foglia's construction of the Homeowners Policy and her argument that it contains an ambiguity that affords coverage for the allegations in the negligence cause of action.  Under Pennsylvania law, "[a]n ambiguity in contract language exists when the questionable term or language, viewed in the context of the entire policy, is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Meyer*, 648 F.3d at 163 (internal quotation marks and citation omitted).   An ambiguous term is construed against the insurer, the drafter of the policy, and in favor of the insured.  *Id.* (citations omitted).  "Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language."  *Id.* at 164 (quoting *Madison Constr.*, 735 A.2d at 100). "Courts should not distort the meaning of the language or strain to find an ambiguity," and "[a] contract is not rendered ambiguous merely because the parties disagree about its construction." *Id.* (citations omitted).

Foglia bases her ambiguity argument on the Homeowners Policy language of "[w]e will defend you, at our expense with counsel of our choice, against any suit seeking these damages." (Homeowners Policy at Policy 30 (emphasis omitted).)  She contends that, according to the aforementioned language, the "grant of coverage for a defense has two conditions: (1) the insured is sued[;] and (2) the complaint alleges 'these damages.'"  (Pl.'s Br. in Support of Pl.'s Answer to Cross-Mot. Summ. J. at 15.)  And because "these damages" is not a defined term in the Homeowners Policy, she claims that she satisfied the requirements for a defense because she was sued in an action that sought damages.

We find Foglia's ambiguity argument to be without merit.  The Homeowners Policy provides coverage for "bodily injury, property damage and personal injury to others for which the law holds [an insured] responsible because of an occurrence to which this coverage applies." (Homeowners Policy at Policy 30.)  The very next sentence states that "[w]e will defend you, at our expense with counsel of our choice, against any suit seeking these damages."  (*Id.*)  In other words, Metropolitan must provide a defense in a suit seeking sums for bodily injury, property damage, and personal injury for which the law holds the insured responsible as a result of an occurrence.  This interpretation is confirmed just two sentences later, where the Homeowners Policy states that Metropolitan is "not obligated to defend any claim or suit seeking damages not covered under this policy."  (*Id.*); *see also Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1094 (Pa. 1997) ("[T]he insurer's duty to defend is limited to only those claims covered by the policy.").  Accordingly, the Konn Complaint must have alleged an "occurrence" and either "bodily injury," "property damage," or "personal injury" for Metropolitan to have had a duty to defend Foglia in the Underlying Action.

## 2.     The Konn Complaint Does Not Allege "Property Damage"

We next address Metropolitan's argument that it had no duty to defend Foglia in the Underlying Action because the Konn Complaint does not allege any "property damage."  (*See* Def.'s Br. in Support Cross-Mot. Summ. J. at 19-22.)  The Homeowners Policy provides that "[w]e will pay all sums for bodily injury, property damage and personal injury to others for which the law holds you responsible because of an occurrence to which this coverage applies." (Homeowners Policy at Policy 30 (emphasis omitted).)  Neither part contends that bodily injury or personal injury are implicated in this case.  Therefore, the harm alleged to have occurred to

the Property as a result of Foglia's actions or omissions must fall within the definition of "property damage" for the Konn Complaint to have triggered Metropolitan's duty to defend.

"Property damage" is defined as "physical damage to or destruction of tangible property, including loss of use of this property." (*Id.* at Policy 07.) The Konn Complaint avers that "[a]s a direct and proximate result of the fraud and intentional concealment, [the Konns] purchased the property, which now requires massive and costly reconstruction, including demolition, to their great detriment and loss." (Konn Compl. ¶ 50.) It further alleges that the Konns were unable to move into the home based on the fraud and intentional concealment. (*Id.* ¶ 51.)

The Supreme Court of Pennsylvania does not appear to have ruled on the issue of whether negligent omissions in the context of the sale of a home constitute "property damage." However, a number of federal district courts within the United States Court of Appeals for the Third Circuit ("Third Circuit") have examined the issue and answered in the negative. For example, *USAA Cas. Ins. Co. v. Bateman* concerned a similar case in a declaratory judgment action in which the insurer sought a declaration that it owed no defense obligations in a suit brought by the buyer of their insured's property. No. 07-3700, 2008 WL 4761718, at *1 (E.D. Pa. Oct. 30, 2008). There, the insured (the seller) signed a "Seller's Property Disclosure Statement" that stated she was not aware of any material defects to the property not already disclosed. *Id.* Upon taking possession, however, the buyers discovered numerous defects in the home that were not already disclosed, such as a roof that needed to be repaired, improper flashing of the chimneys, a central air conditioning system and a second floor heating unit that were malfunctioning, and the unloading of a sump pump into the public sewer. *Id.*

The buyers then brought suit against the insured, contending the insured was aware or should have been aware of the issues and that she failed to inform them. *Id.* In response to the

suit, the insured requested a defense and indemnification from USAA pursuant "to her homeowners insurance policy and/or other policies." *Id.* at *2. USAA eventually provided a defense and subsequently filed a declaratory judgment action in the United States District Court for the Eastern District of Pennsylvania seeking a declaration that it owed no defense or indemnity obligations to their insured in the underlying litigation. *Id.*

The court concluded, among other reasons, that USAA did not owe a defense to their insured because the underlying action did allege harm that constituted "property damage." *Id.* at *8. The court stated that "[t]he acts at issue in the underlying lawsuit amounted to a misrepresentation of the status of the home, whether it be intentional or negligent. At no point did [the insured's] acts ever inflict damage on the home *that was not already in existence prior to the acts in question*." *Id.* (emphasis added). The court further reasoned that "[t]he house was in the same state prior to the sale as it was after the sale. The only harm that occurred was that the Underlying Plaintiffs did not purchase the home they expected to purchase. This, however, does not constitute 'property damage.'" *Id.* Therefore, the insurer did not owe any defense obligations because the underlying action did not allege "property damage."

Similarly, in *21st Century N. Am. Ins. Co. v. Wolfington*, the underlying plaintiffs alleged that 21st Century's insured (Wolfington) failed to disclose zoning defects and pre-existing physical and mechanical defects in a property Wolfington sold to them. 892 F. Supp. 2d 692, 694-95 (E.D. Pa. 2012). Such allegations against Wolfington included claims of fraudulent misrepresentation, negligent misrepresentation, negligence, breach of warranty, breach of contract, and violations of Pennsylvania's UTPCPL. *Id.* at 695. In response to the suit, Wolfington requested a defense and indemnification from 21st Century pursuant to his homeowners insurance policy. *Id.* 21st Century provided a defense under a reservation of rights

and then filed a declaratory judgment action, claiming that it had no duty to defend Wolfington in the underlying suit. *Id.*

Relying on *Bateman*, the court held that 21st Century had no duty to defend Wolfington because the allegations in the underlying litigation failed to constitute "property damage." *Id.* at 697. Indeed, the court noted that other courts outside of the Third Circuit have held similarly, *see id.* at 699 (collecting cases), and that the "case law is 'virtually unanimous' that damages flowing from misrepresentation in home sales 'have no basis in property damage' but are 'economic and contractual in nature and as such do not fall within the scope of coverage' of typical homeowners' insurance policies." *Id.* (quoting *State Farm Fire and Cas. Co. v. Brewer*, 914 F. Supp. 140, 142 (S.D. Miss. 1996)).

We find the reasoning in *Bateman* and *Wolfington* persuasive and similarly conclude that the Konn Complaint did not allege "property damage" as defined in the Homeowners Policy.[9] Foglia places considerable emphasis on the following averments of the Konn Complaint in her argument that there is coverage:

> ¶ 70. The negligence, carelessness and/or recklessness of defendant Foglia also includes the following:
>
> *       *       *
>
> c. Failing to conduct an appropriate inspection to determine whether there was water infiltration and/or damage to the home while she owned it;
>
> d. Failing to recognize water infiltration;
>
> e. Failing to hire and/or retain competent professionals to remediate the water infiltration and/or damage;
>
> f. Failing to retain competent agents, servants, contractors and/or workmen;

---

[9] The definitions of "property damage" in *Bateman* and *Wolfington* are identical to Metropolitan's definition.

g.     Vicarious liability for defendants Burke and Berkshire Hathaway; [and]

h.     Failing to fix the source of the water infiltration[.]

(Compl. ¶ 70(c)-(h).)  However, all of the above averments that she relies so heavily on state that the water infiltration and damage was already existing prior to the sale of the Property. Therefore, Foglia's alleged misconduct, even to the extent that it is an "occurrence," did not cause any "property damage" because the Konn Complaint directly alleges that the water infiltration was pre-existing.  Like the courts in *Bateman* and *Wolfington*, we conclude that the pre-existing damage to the Property does not constitute "property damage" as it is defined in the Homeowners Policy.  Accordingly, Metropolitan owed no defense obligations to Foglia in the Underlying Action.

### 3.     The Konn Complaint Does Not Allege An "Occurrence"

Metropolitan also argues that it owed no defense obligations to Foglia because the Konn Complaint does not allege an "occurrence."  The Homeowners Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the term of the policy."  (Homeowners Policy at Policy 07.)  The Homeowners Policy does not define "accident."  In making the determination of whether there is a duty to defend, we are mindful that "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered.  Instead it is necessary to look at the factual allegations contained in the complaint."  *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 926 (Pa. Super. Ct. 2004) (quoting *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)).

The factual allegations in the Konn Complaint clearly allege intentional conduct on the part of Foglia in the sale of her home; therefore, there was no "accident."  For example, the Konns alleged that:

17

¶ 22.    Defendant Foglia knew or should have known about the history of water infiltration and water damage[;]

*      *      *

¶ 40.    The work done to the area of the home that was to become an in-law suite was performed to *conceal* evidence of water infiltration and damage[;] and

*      *      *

¶ 44.    Defendant Foglia and/or people working on her behalf *actively worked to conceal evidence and information about water infiltration in order to induce [the Konns] to purchase the property*.

(Konn Compl. ¶¶ 22, 40, 41 (emphasis added).)  Even the negligence cause of action includes allegations that amount to intentional misrepresentation.  For example, the Konns pleaded that "[t]he condition of the Property misrepresented by Foglia was material to [the Konns'] decision to purchase [sic] of the Property" and "[t]he misrepresentations by Foglia as to the condition of the Property were made with the *intent* that [the Konns] believe and rely on such misrepresentations."  (*Id.* ¶¶ 67, 69 (emphasis added).)

The Konns clearly pleaded factual allegations of intentional misconduct on the part of Foglia in the sale of her home.  These are not the types of claims that constitute "accidents."  Further, the fact that the Konns labeled Count IV "Negligence" has no impact on the analysis.  *See Muff*, 851 A.2d at 926 (quoting *Haver*, 725 A.2d at 745).  Accordingly, Metropolitan had no duty to defend Foglia in the Underlying Action under the Homeowners Policy because there was no "occurrence" pleaded in the Konn Complaint.

While it is somewhat unclear, Foglia appears to argue that Metropolitan owed her a defense pursuant to *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286 (Pa. 2007).  In that case, Baumhammers, who at the time was living with his parents, shot and killed five individuals

18

and seriously wounded a sixth.  *Id.* at 288.  The estates of the deceased victims then filed suit in

Pennsylvania state court against Baumhammers and his parents.  *Id.*  As it pertains to the parents,

it was alleged that they failed to procure adequate mental health treatment for Baumhammers;

failed to take Baumhammers' handgun away from him; and failed to notify the appropriate

authorities that Baumhammers possessed a handgun.  *Id.* at 289-90.

Donegal Mutual Insurance Company insured the parents under a homeowners policy that

provided coverage for claims caused by an "occurrence."  *Id.* at 289.  The Donegal policy

defined "occurrence" as an "accident, including continuous or repeated exposure to substantially

the same harmful conditions, which results, during the policy period in . . . [b]odily injury or

[p]roperty damage."  *Id.* (internal quotation marks omitted) (alterations in original).  Donegal

filed a complaint for declaratory judgment, seeking a declaration that it owed no duty to defend

or indemnify Baumhammers and the parents because the shootings were not an accident, but the

result of intentional conduct of which the policy did not provide coverage.  *Id.*

Regarding the claim of negligence on the part of the parents, the Supreme Court of

Pennsylvania held that such allegations constitute an "accident."  *Id.* at 293.  The court stated

that

> [t]he extraordinary shooting spree embarked upon by
> Baumhammers . . . cannot be said to be the natural and expected
> result of Parents [sic] alleged acts of negligence.  Rather,
> Plaintiffs' injuries were caused by an event so unexpected,
> undesigned and fortuitous as to qualify as accidental within the
> terms of the policy.

*Id.*  Therefore, Donegal was required to defend the parents in the underlying suits.

Foglia's reliance on *Baumhammers* is misplaced.  In *Baumhammers*, the insurer sought to

avoid defense obligations to the parents on the basis that their son's shooting spree was an

intentional act.  The instant matter is easily distinguishable because *Foglia herself* is alleged to

have engaged in the intentional and fraudulent acts in connection with the sale of her home. This is not a case where an individual's alleged negligence gives rise to a third-party's intentional act, as was alleged in *Baumhammers*. Accordingly, *Baumhammers* provides no support for Foglia.

### 4.    There Is No Coverage Under the Excess Policy

The Excess Policy has virtually identical definitions of "property damage" and "occurrence" as the Homeowners Policy. For the same reasons as articulated above with respect to the Homeowners Policy, the Konn Complaint did not trigger the duty to defend under the Excess Policy because there was no alleged "property damage" or "occurrence." Accordingly, Metropolitan owed no defense obligations under the Excess Policy.

## IV.    CONCLUSION

The Konns did not allege "property damage" or an "occurrence" such that Metropolitan had a duty to defend Foglia in the Underlying Action. "Simply put, 'to find coverage existed in this case would be to find that based on an act of sale, a homeowner's insurance becomes the warrantor of the condition of the insured property.'" *Wolfington*, 892 F. Supp. 2d at 699 (quoting *Lawyer v. Kountz*, 716 So.2d 493, 498 (La. App. 1998)).

We have examined the remainder of Foglia's arguments and find them to be without merit.[10] Accordingly, Metropolitan's Motion for Summary Judgment is granted, and Foglia's

---

[10] For instance, Foglia claims, in what appears to be a last-ditch effort to avoid summary judgment, that "[u]nder the Declaratory Judgment Act, the court may decline to exercise its jurisdiction over the case." (Pl.'s Mem. Support Mot. Summ. J. at 28.) Foglia provides absolutely no reasoning or argument as to why we should decline to exercise jurisdiction over this matter. To the contrary, we have a "virtually unflagging obligation" to exercise jurisdiction over this case because *Foglia herself* has filed claims (breach of contract and bad faith) that seek legal relief. *See Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 227 (3d Cir. 2017). We will continue to exercise jurisdiction over all of the claims in this case as we have done since its removal in March 2017.

Foglia also consistently argues throughout her briefing that she was entitled to a defense because she did not know there was water damage to the Property prior to its sale. (*See, e.g.*, Pl.'s Br. in Support of Pl.'s Answer to Cross-Mot. Summ. J. at 8 ("Metropolitan was required to act with the utmost good faith and to accept Foglia's unequivocal statement that she had no knowledge of the property damage."); *see also id.* at 7, 12, 24.) Such a proposition is in direct contravention of Pennsylvania law. Pennsylvania courts are clear that "the obligation of a casualty insurance company to defend an action brought against the insured is to be determined *solely* by the allegations of the [underlying] complaint." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins.*

Motion for Summary Judgment is denied.  Judgment is entered in favor of Metropolitan on its counterclaim for declaratory judgment and Foglia's breach of contract claim.[11]

An appropriate Order follows.

---

*Co.*, 908 A.2d 888, 896 (Pa. 2006) (quoting *Wilson v. Md. Cas. Co.*, 105 A.2d 304, 307 (Pa. 1954) (emphasis in original); *Penn-Am. Ins. Co. v. Peccadillos, Inc.*, 27 A.3d 259, 265 (Pa. Super. Ct. 2011) ("[T]he allegations raised in the underlying complaint alone fix the insurer's duty to defend.") (quoting *Erie Ins. Exch. v. Claypoole*, 673 A.2d 348, 355 (Pa. Super. Ct. 1996) (en banc)).
Lastly, we see no need for oral argument in this matter and deny Foglia's request for it.

[11] The parties have stipulated that the instant Cross-Motions for Summary Judgment address only Foglia's breach of contract claim and Metropolitan's counterclaim for declaratory judgment.  (*See* Doc. Nos. 25, 26.)  Accordingly, we do not opine on the merits of Foglia's bad faith claim.